**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**RYAN D. SCHAEKEL,**

**Plaintiff,**

**v.** **Case No. 25-CV-506**

**FRANK J. BISIGNANO,**
***Commissioner of Social Security*,**

**Defendant.**

---

## DECISION AND ORDER

---

### 1. Introduction

Ryan Schaekel alleges that he has been disabled since April 10, 2010 (Tr. 3029) due to a right ankle impairment, lumbar degenerative disc disease, depression, and anxiety. (Tr. 3032.) On September 21, 2014, Schaekel filed a Title II application seeking a period of disability and disability insurance benefits for the period between his alleged onset date and March 31, 2014, the date he was last insured. (Tr. 17.)

Administrative Law Judge (ALJ) William Shenkenberg, in a decision that became the final decision of the Commissioner after the Appeals Council declined to review it (Tr. 3018–21), found that Schaekel was not disabled during this period. Thereafter, Schaekel filed this action on April 7, 2025. (ECF No. 1.) This is his fourth time appealing an unfavorable social security decision in district court, with three prior decisions having been remanded to the Commissioner upon the joint stipulation

of the parties. *See Schaekel v. Berryhill*, 18-CV-01251-LA (ECF No. 17), (Tr. 723–31). *See also Schaekel v. Kijakazi*, 21-CV-00445-SCD (ECF No. 26), (Tr. 2017–25); *Schaekel v. Kijakazi*, 23-CV-00753-BHL (ECF No. 10), (Tr. 3145–51).

**2. ALJ's Decision**

In determining whether a person is disabled, an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4). The steps are followed in a set order, but if a claimant is determined to be disabled or not to be disabled at any step in the process, the evaluation does not continue to the next step. 20 C.F.R. §§ 404.1520(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i). The ALJ found that Schaekel "has not engaged in substantial gainful activity during the period from his alleged onset date of April 10, 2010, through his date last insured of March 31, 2014[.]" (Tr. 3032.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a). The ALJ concluded that Schaekel has the following severe impairments: right ankle disorder status post surgery, lumbar degenerative disc disease, depression, and anxiety. (Tr. 3032.) The ALJ also noted the following non-severe impairments: hyperlipidemia, right hip strain, right knee strain, and alcohol abuse. *Id.*

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. §§ 404.1509, the claimant is disabled. 20 C.F.R. §§ 404.1520(d). If the claimant's impairment or impairments are not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e). The ALJ found that Schaekel "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" (Tr. 3033.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a)(1). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ determined Schaekel's RFC as follows:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant could occasionally operate foot controls with the right lower extremity; could never climb ladders, ropes or

> scaffolds; and could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. The claimant needed to avoid concentrated exposure to hazards, such as moving machinery and unprotected heights. The claimant was able to understand, remember and carry out simple instructions, and perform simple routine tasks, in a position having only occasional changes. The claimant was able to maintain concentration, persistence and pace for simple tasks in two-hour increments over the course of normal workday and workweek. The claimant could have no public interaction. The claimant could have occasional interaction with coworkers and supervisors but no tandem tasks.

(Tr. 3036–37.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560. The ALJ concluded that Schaekel has no past relevant work, noting that he did not perform substantial gainful work activity within the five years before his date last insured. (Tr. 3051.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). At this step the ALJ concluded that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed[.]" (Tr. 3051.) A vocational expert testified at Schaekel's hearing that Schaekel, considering his RFC, age, education, and work experience, could perform the requirements of the following occupations: addresser, paramutual [sic] ticket checker, slip sorter, and document preparer. (Tr. 3052.) The ALJ found that a significant number of these occupations

existed in the national economy based on the vocational expert's testimony that over 35,000 jobs existed in these fields. (Tr. 3052–53.)

The ALJ ultimately concluded that Schaekel was not disabled at any time from his alleged onset date through his date last insured. (Tr. 3053.)

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

### 4. Analysis

Schaekel raises one issue for this court to review: whether the ALJ's mental RFC finding violated SSR 96-8p. (*See* ECF No. 11 at 1–2) (explaining that Schaekel's brief focuses on "mental impairments").

Schaekel argues that the ALJ's RFC finding violated SSR 96-8p by failing to build a logical bridge between the medical evidence and the prescribed work-related limitations. (ECF No. 11 at 4–5.) Specifically, he argues that substantial evidence does not support prescribed limitations to work with simple instructions, simple routine tasks, and occasional changes, as there is no inherent connection between these work-related limitations and a RFC with a moderate limitation in concentration, persistence, or pace. (*See* ECF No. 11 at 4, 6–7.) Schaekel further argues that work-related limitations to occasional interactions with coworkers and supervisors, intended to address moderate limitations in interacting with others, are likewise unsupported by substantial evidence. (*See* ECF No. 11 at 11.)

SSR 96-8p provides that an ALJ's RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." An ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p. Schaekel contends that this narrative discussion is absent from the ALJ's decision, arguing that the ALJ provided "no record basis" to support the specific limitations prescribed. (ECF No. 11 at 4, 11.) However, this argument fails to account

for an ALJ's minimal articulation requirement. *See Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024).

"Time and time again" the Seventh Circuit has emphasized that ALJs are "subject to only the most minimal of articulation requirements." *Id.* In other words, an ALJ need only provide enough explanation to allow the reviewing court to assess the validity of the agency's findings such that claimants are afforded meaningful judicial review. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). "An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning," so long as the court can follow his path of reasoning. *Warnell*, 97 F.4th at 1053; *see also Brown v. Bowen*, 847 F.2d 342, 346 (7th Cir. 1988). Courts will reverse an ALJ's decision only if the record compels a contrary result; they do not reweigh the evidence, resolve evidentiary conflicts, determine credibility, or substitute their own judgment for that of the ALJ so long as the ALJ's judgment is supported by substantial evidence. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

**4.1. Concentration, Persistence, and Pace**

The ALJ found moderate limitations in concentration, persistence, and pace (Tr. 3035) and accordingly limited Schaekel to work with simple instructions, simple routine tasks, and occasional changes (Tr. 3044). Schaekel disputes that these work-related limitations adequately address his functional limitations and argues that the RFC assessment fails to build a logical bridge between these specific limitations and the evidence the ALJ offers in support—"low motivation and energy, decreased

concentration, depressed mood, anxiousness/panic, fatigue, and hopelessness, worthlessness and his reports of diminished ability to perform daily activities." (ECF No. 11 at 4–5), (Tr. 3044). The Commissioner counters that "[h]ow the ALJ arrived at the restrictions [in the RFC assessment] is explicitly apparent," noting that the ALJ credited Schaekel's claimed limitations—just not to their full extent—and imposed restrictions accordingly. (ECF No. 21 at 8.) The Commissioner is correct—the ALJ provided this court with enough explanation to trace the path of his reasoning and grounded his findings in substantial evidence.

The ALJ states that although Schaekel's medically determinable impairments could reasonably cause his reported symptoms, his "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…" (Tr. 3045.) Although some courts have criticized the use of "not entirely consistent" as boilerplate that suggests a more rigorous standard than the regulations, this language by itself does not require remand so long as the ALJ fully explains his decision. *See Wood v. Kijakazi*, No. 22-CV-627, 2023 U.S. Dist. LEXIS 14956, at *19 (E.D. Wis. Jan. 30, 2023) (collecting cases). Here, the ALJ provides ample explanation as to why he does not credit Schaekel's symptoms to the full extent Schaekel alleges. He explains that Schaekel's "allegations of debilitating, chronic symptoms associated with his depression and anxiety" are "not consistent with the claimant's largely unremarkable mental status examinations" where he demonstrated "abstract functions, social judgment, fund of general information, reliability and insight … within normal

limitations" along with a "cooperative, alert and oriented" presentation and "adequate" concentration and attention. (Tr. 3046–47.)

The ALJ also sufficiently explains his reasoning for partially discounting the medical opinion of Dr. Jessica Brundage, a VA examiner whom Schaekel relies on in attempting to argue that the ALJ's RFC limitations are not supported by substantial evidence. (*See* ECF No. 11 at 2, 9.) Medical opinion evidence in cases involving claims filed prior to March 27, 2017, is evaluated pursuant to 20 C.F.R. § 404.1527. An ALJ gives greater weight to medical opinion from treating sources or examining sources (with treating sources even given controlling weight if well-supported by medically acceptable diagnostic techniques and not inconsistent with substantial evidence), or to opinion from specialists discussing their area of specialization. *See* 20 C.F.R. § 404.1527(c)(1)–(2), (5). However, an ALJ can discount a medical opinion if it is at odds with the weight of other medical evidence in the record. *See Karr v. Saul*, 939 F.3d 508, 513 (7th Cir. 2021). Additionally, ALJs evaluate the supportability and consistency of the medical opinion, along with any other factors that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1527(c)(3)–(4), (6). Supportability refers to the amount of relevant evidence and explanation a medical source provides to support their opinion and consistency; the more evidence and explanation provided, the more weight should be given to the opinion. 20 C.F.R. § 404.1527(c)(3). Consistency means that opinions that are more consistent with the record as a whole will be afforded more weight. 20 C.F.R. § 404.1527(c)(4).

The court evaluates the ALJ's reasoning with the above standards in mind. The ALJ found that Dr. Brundage's opinion was "not supported by her examination findings" and "not consistent with the evidence of record," and therefore granted the opinion little weight. (Tr. 3050.) His findings on supportability and consistency were bolstered by his citation to other evidence in the record ("ability to follow conversation, perform the serial 7s, and attend and concentrate, logical and linear thoughts, and normal insight…" (Tr. 3050)) that supported the ALJ's RFC findings, rather than a more stringent limitation. (Tr. 3050.) He also noted that Dr. Brundage only completed a one-time evaluation of Schaekel "two months after the date last insured and for purposes of a different program with different criteria." (Tr. 3050.)The ALJ provided this court with sufficient explanation to trace his reasoning in determining that "the claimant's allegations regarding the degree of limitation associated with his symptoms cannot reasonably be accepted as consistent with the objective medical evidence including diagnostic testing, physical and mental status examinations and treatment history." (Tr. 3045.) This finding logically undergirds the ALJ's RFC finding and is supported by substantial evidence, consistent with the ALJ's minimal articulation requirement.

Schaekel argues that it is "unclear how the ALJ credited [the] evidence to the extent that he felt his own determinations were supported, but not to the extent that Mr. Schaekel had alleged." (ECF No. 11 at 8.) On the contrary, it is abundantly clear how the ALJ credited the evidence in this case. He considered a variety of evidence—ranging from Schaekel's self-report and Dr. Brundage's report, suggesting greater

symptom severity and a need for more stringent RFC limitations (Tr. 356–65, 3046, 3049–50); to the reports of State agency doctors, who found at most mild limitations (Tr. 68, 79, 3049)—and appropriately discounted each of these sources. He then determined the RFC most consistent with the record as a whole. And this is exactly what ALJs do—ALJs, not doctors, weigh the evidence in the record and determine a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). Although ALJs must consider all relevant medical evidence and cannot ignore evidence that suggests a finding of disability, *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010), the ALJ weighs the entire record and determines the claimant's RFC—he need not merely adopt the RFC determination of a particular physician or choose between the opinions of the claimant's physicians. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Indeed, the ALJ's discounting of the opinions of State agency doctors to find greater RFC limitations is suggestive of the careful, reasoned consideration given to this record. *See Tutwiler v. Kijakazi*, 87 F.4th 853, 859–60 (7th Cir. 2023) (ALJ's "independent review of the full evidentiary record" led him to depart from the recommendations of State agency physicians, showing "careful consideration" of the record); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (ALJ found greater RFC limitations than those suggested by State agency doctors or psychologists, illustrating that "reasoned consideration" was given to the evidence).To require an ALJ to arrive at a different RFC determination under these circumstances would be to substitute this court's judgment for that of the ALJ, an action that falls outside of this court's purview. *See Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000) (court does not "reweigh the evidence,

resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner" when reviewing social security claims).

Schaekel's argument that the ALJ erred by failing to incorporate the vocational expert's testimony about off-task limits (ECF No. 11 at 10) is likewise unavailing. He argues that the expert's testimony—specifically the expert's statement indicating that being off task 15% or more of the time was inconsistent with competitive employment (Tr. 3088)—was not adequately discussed in the ALJ's decision. "As a general rule, both the hypothetical posed to the [vocational expert] and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). However, the ALJ did not find that Schaekel would be off-task 15% or more of the time; rather, he found that Schaekel could "maintain concentration, persistence and pace for simple tasks in two-hour increments over the course of normal workday and workweek." (Tr. 3036–37.) Accordingly, the ALJ was not required to address a limitation that he did not accept as credible. *See Schmidt*, 496 F.3d at 845–46. Further, the ALJ plainly included the limitations that he did find were supported by the medical record both in his hypotheticals to the vocational expert (Tr. 3084, 3087) and in his RFC assessment (Tr. 3036–37).

In sum, the ALJ's conclusion that work with simple instructions, simple routine tasks, and occasional changes adequately addresses Schaekel's moderate limitations in concentration, persistence, and pace was supported by substantial evidence.

### 4.2. Interaction with Others

The ALJ found moderate limitations in interacting with others, noting that the record shows that Schaekel had "deficits in [his] abilities to interact with [] others, particularly when in public," but also that he "possessed some capacity to interact appropriately with others, maintain relationships, and go out into the community." (Tr. 3035.) Accordingly, the ALJ limited Schaekel to occasional interaction with coworkers and supervisors but no public interaction and no tandem tasks. (Tr. 3037.) Schaekel argues that the prescribed RFC limitations lack a "logical connection" to evidence cited by the ALJ and further contends that the "cited evidence supported Mr. Schaekel's allegations of more significant limitations interacting with others." (ECF No. 11 at 11–14.) As with concentration, persistence, and pace, the ALJ has provided this court with sufficient explanation to trace his reasoning in arriving at his RFC determination, and his finding that occasional interaction with coworkers and supervisors adequately addresses Schaekel's moderate limitation in interaction with others is supported by substantial evidence.

The ALJ's analysis of RFC limitations related to interaction with others follows a similar pattern to his analysis of RFC limitations related to concentration, persistence, and pace. He does not ignore evidence that would suggest a finding of disability. Rather, he acknowledges it and credits it, but to a lesser extent than that alleged by Schaekel. The ALJ cites "the claimant's reports of problems in public spaces and crowds, anxiousness and paranoia in public, social withdrawal/limited social activities and problems interacting with others and Dr. Brundage's conclusion

that he had poor social functioning with difficulties establishing and maintaining relationships" in support of the need for limitations—explicitly acknowledging evidence that might support a finding of greater disability. (Tr. 3045.) However, the ALJ then adequately explains why he discounts this evidence—because it was inconsistent with Schaekel's cooperative affect during provider interactions, his having friendships, and his patronage of stores when they were not crowded. (Tr. 3048.) Such evidence provides support for the ALJ's conclusion that Schaekel's symptoms are not as severe as alleged. *See Cain v. Bisignano*, 148 F.4th 490, 499 (7th Cir. 2025) (affirming an ALJ's RFC determination when ALJ compared state-agency checkbox responses against record evidence including the fact that claimant was "typically cooperative and had an appropriate affect during his medical appointments"); *Hernandez v. Bisignano*, No. 25-CV-845, 2026 U.S. Dist. LEXIS 174121 (E.D. Wis. Aug. 5, 2026) (finding that a "pleasant and cooperative" presentation with "adequate grooming and hygiene" can support an ALJ's partial discounting of a medical opinion). Accordingly, the ALJ provided this court with sufficient explanation of his partial discounting of Schaekel's self-reported symptoms and Dr. Brundage's evaluation to trace his path of reasoning. Although Schaekel might want a more detailed explanation, an ALJ's articulation requirement is minimal, and the ALJ has satisfied the minimal requirement in this case. *Warnell*, 97 F.4th at 1053. And whether the cited evidence might support more significant limitations than those found by the ALJ is not a question for this court. *See Clifford*,

227 F.3d at 863 (court does not "reweigh the evidence" when reviewing social security claims).

In sum, the ALJ's conclusion that limitations to occasional interaction with coworkers and supervisors adequately addresses Schaekel's moderate limitations in interacting with others was supported by substantial evidence.

**5. Conclusion**

The ALJ's decision was consistent with the law and supported by substantial evidence. Accordingly, the court must affirm the final decision of the Commissioner.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **affirmed**. The Clerk shall enter judgment accordingly.

Dated at Green Bay, Wisconsin this 18th day of August, 2026.

*s/ Byron B. Conway*
BYRON B. CONWAY
United States District Judge